1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | No.  2:23-cv-00974-DAD-AC |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | |
| Defendant. | (Doc. Nos. 17, 24) |

This matter is before the court on the parties' cross-motions for summary judgment.  On July 19, 2024, plaintiff Travelers Property Casualty Company of America ("plaintiff") filed a motion seeking summary judgment in its favor (Doc. No. 17), and on August 12, 2024, defendant National Union Fire Insurance Company of Pittsburgh, PA ("defendant") filed a response and cross-motion seeking summary judgment in its favor (Doc. No. 24).  The pending motions were taken under submission on the papers on September 5, 2024.  (Doc. Nos. 26, 27.)  For the reasons explained below, plaintiff's motion for summary judgment will be denied and defendant's cross-motion for summary judgment will be granted.

/////

/////

1

1

## BACKGROUND

2    **A.    Factual Background**[1]

3         The Ohio Security Insurance Company ("Liberty")[2] issued a Business Auto Policy to the

4    company Western Engineering Contractors, Inc. ("WEC") for the period covering April 1, 2020

5    to April 1, 2021 ("the Liberty policy").  (DUF ¶ 4.)  The Liberty policy provides in relevant part:

6             **ITEM TWO:  SCHEDULE OF COVERAGES AND COVERED**
             **AUTOS**
7
8                 This policy provides only those coverages where a charge is
                 shown in the premium column below.  Each of these
9                 coverages will apply only to those "autos" shown as covered
                 "autos".   "Autos" are shown as covered "autos" for a
10                particular coverage by the entry of one or more symbols from
                 the COVERED AUTO Section of the Business Auto
11                Coverage Form next to the name of the coverage. . . .

12            **SUMMARY OF COVERED VEHICLES** . . .

13            **UNIT  YEAR MAKE/MODEL       VIN**

14            002     2014   FORD  F-150   1FTFX1CF4EFB31500 . . .

15            **ITEM THREE:   COVERED VEHICLES AND PREMIUM**
             **DETAIL** . . .
16
             UNIT 002      2014 FORD F-150      VIN:  1FTFX1CF4EFB31500
17
             . . .
18
             **BUSINESS AUTO COVERAGE FORM**
19
             **SECTION I – COVERED AUTOS**
20
                 ITEM TWO of the Declarations shows the "autos" that are
21                covered "autos" for each of your coverages.  The following

22    [1]  The facts that follow are undisputed unless otherwise noted and are derived from the
     undisputed facts as stated by plaintiff (Doc. No. 17-1) and responded to by defendant (Doc.
23    No. 24-2) ("PUF"); the undisputed facts as stated by defendant (Doc. No. 24-1) ("DUF"); and the
     exhibits attached to the affidavits filed by the parties in support of their respective briefs (Doc.
24    Nos. 17-6, 17-7, 24-6, 24-7).  Plaintiff did not file a response to defendant's statement of
     undisputed facts, presumably because, as discussed in this order, the resolution of the pending
25    motions turns on the court's interpretation of the relevant contracts, and the language of those
     contracts is not in dispute.
26

27    [2]  The parties contend that the Ohio Security Insurance Company is affiliated with the Liberty
     Mutual Insurance Company.  (*See* Doc. No. 24 at 2 n.1.)  The parties refer to this entity as
28    "Liberty" throughout their briefing.  The court adopts the same convention to avoid confusion.

numerical symbols describe the "autos" that may be covered "autos".  The symbols next to a coverage on the Declarations designate the only "autos" that are covered "autos".  . . .

### SECTION II – LIABILITY COVERAGE

#### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(Doc. No. 24-7 at 31–33, 55–56.)  It is undisputed that the Liberty policy specifically identifies a 2014 Ford F-150 truck by its year, make, model, and vehicle identification number ("VIN") 1FTFX1CF4EFB31500 ("the Vehicle").  (DUF ¶ 5.)

Defendant also issued a Business Auto Policy to WEC for the period of April 1, 2020 to April 1, 2021 ("the National policy").  (*Id.* ¶ 8.)  It is undisputed that the National policy does not specifically identify the Vehicle, by VIN or any other means, and that the National policy is excess to the Liberty policy.  (*See id.* ¶ 9; PUF ¶ 4; Doc. No. 17 at 10.)

Plaintiff issued an Excess Follow-Form and Umbrella Liability Policy to WEC for the period of April 1, 2020 to April 1, 2021 ("the Travelers policy").  (DUF ¶ 6.)  The Travelers policy provides in relevant part:

### SECTION I – COVERAGES

#### A. COVERAGE A – EXCESS FOLLOW-FORM LIABILITY

1. We will pay on behalf of the insured those sums, in excess of the "applicable underlying limit", that the insured becomes legally obligated to pay as damages to which Coverage **A** of this insurance applies, provided that the "underlying insurance" would apply to such damages but for the exhaustion of its applicable limits of insurance. . . .

2. Coverage **A** of this insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance", except with respect to any provisions to the contrary contained in this insurance.

/////                                                                                    //

3

> 3. The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE**. . . .

> **SECTION V – CONDITIONS** . . .

> **M. OTHER INSURANCE**

> This insurance is excess over any valid and collectible "other insurance" whether such "other insurance" is stated to be primary, contributing, excess, contingent or otherwise. . . .

> **SCHEDULE OF UNDERLYING INSURANCE** . . .

> **Automobile Liability**

> Carrier:    NATIONAL UNION FIRE INSURANCE COMPANY

> **Limits of Liability:**

> Bodily Injury and Property Damage Combined Single Limit $2,000,000 . . .

> **Type Of Coverage:**  AUTOMOBILE LIABILITY

> Carrier:  OHIO SECURITY INSURANCE COMPANY

> **Limits of Liability**

> $1,000,000 CSL

(Doc. No. 24-6 at 5, 19, 33–34.)  The Travelers policy further provides that it "includes this Declaration Page and any forms and endorsements shown on the Listing of Forms, Endorsements and Schedule Numbers."  (PUF ¶ 5; *see also* Doc. No. 17-6 at 2.)

WEC owned the Vehicle.  (PUF ¶ 1; DUF ¶ 2.)  On or about August 14, 2020, Darren Wilkinson, a WEC employee, was driving the Vehicle when he allegedly rear-ended a vehicle being driven by Teresa McIntosh.  (PUF ¶ 1.)  McIntosh's vehicle was allegedly pushed forward into a vehicle being driven by Alvenia Scott.  (*Id.*)  McIntosh and Scott each filed actions against WEC in the Sacramento County Superior Court seeking to recover for their injuries arising from the accident ("the *McIntosh* action" and "the *Scott* action," respectively).  (DUF ¶ 1.)

WEC tendered its defense of the *McIntosh* action to plaintiff on or about May 24, 2022. (PUF ¶ 6.)  Plaintiff requested that WEC tender its defense of the *McIntosh* action to defendant. (*Id.* ¶ 7.)  The *McIntosh* action settled for approximately $1.25 million; the Liberty policy covered

4

1   $975,045.65, while plaintiff paid the remaining $274,954.36.[3]  (Doc. No. 17-7 at ¶ 15.)  In April

2   2024, plaintiff settled the *Scott* action for $575,000; plaintiff also incurred $62,069.41 in expenses

3   in the course of defending the *Scott* action.[4]  (PUF ¶ 11.)  Defendant has not paid plaintiff for any

4   of the costs of the *McIntosh* and *Scott* actions, contending that the National policy is excess to

5   Travelers policy by operation of California Insurance Code § 11580.9(d).  (PUF ¶ 18.)

6               **A.       Procedural Background**

7           Plaintiff filed its complaint on May 23, 2023, asserting four claims against defendant.

8   (Doc. No. 1.)  First, plaintiff asserts a claim for declaratory relief, seeking a judicial declaration

9   that defendant is obligated to:  (1) defend and indemnify WEC on a primary basis with respect to

10  the *Scott* action; (2) reimburse plaintiff for all costs incurred in defending the *Scott* action; and

11  (3) reimburse plaintiff in the amount of $274,954.36 in connection with the *McIntosh* action

12  because the Travelers policy is excess to the National policy.  (*Id.* at ¶¶ 24–35.)  Plaintiff also

13  brings claims against defendant for equitable subrogation, equitable indemnity, and equitable

14  contribution, all premised on plaintiff's contention that the Travelers policy is excess to the

15  National policy.  (*Id.* at ¶¶ 36–60.)

16          On July 19, 2024, plaintiff filed its motion for summary judgment in its favor on all of its

17  claims.  (Doc. No. 17.)  On July 23, 2024, this case was reassigned to the undersigned.  (Doc.

18  No. 18.)  On August 12, 2024, defendant filed its combined opposition and cross-motion for

19  _____

20  [3]  Defendant purports to dispute the amount paid by plaintiff in relation to the *McIntosh* action.
    (*See* PUF ¶ 11.)  Defendant does not argue that the declaration submitted by plaintiff in support of
21  this fact is deficient due to, for instance, lack of personal knowledge.  Nor does defendant dispute
    that plaintiff contributed some amount of money toward the settlement of the *McIntosh* action.
22  (*See id.* ¶ 13.)  Instead, defendant argues that plaintiff has provided "no independent
    documentation" of the settlement agreement.  (*Id.* ¶ 11.)  Defendant does not provide any
23  evidence actually calling into dispute the amount paid by plaintiff as part of the settlement of the
    *McIntosh* action.  Because the court will conclude that plaintiff's policy is primary and
24  defendant's policy is excess, the court will deny plaintiff's motion for summary judgment and
    grant defendant's cross-motion regardless of the outcome of defendant's evidentiary objection on
25  this point.  Consequently, the court hereby overrules defendant's objection as moot in light of this
26  order.

27  [4]  Defendant disputes these amounts on the same grounds discussed in the prior footnote, namely
    that plaintiff has provided no independent documentation of these costs.  (*See* PUF ¶ 11.)  The
28  court hereby overrules defendant's objection as moot for the same reasons explained above.

                                    5

1  summary judgment in its favor on all of plaintiff's claims.  (Doc. No. 24.)  Plaintiff filed its

2  opposition to defendant's cross-motion on September 3, 2024.  (Doc. No. 25.)  On September 13,

3  2024, defendant filed its reply thereto.  (Doc. No. 28.)

4                                          **LEGAL STANDARD**

5          Summary judgment is appropriate when the moving party "shows that there is no genuine

6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

7  Civ. P. 56(a).

8          Each party's position, whether it be that a fact is disputed or undisputed, must be

9  supported by (1) "citing to particular parts of materials in the record, including depositions,

10  documents, electronically stored information, affidavits or declarations, stipulations (including

11  those made for purposes of the motion only), admissions, interrogatory answers, or other

12  materials"; or (2) showing that such materials "do not establish the absence or presence of a

13  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

14  Fed. R. Civ. P. 56(c)(1)(A), (B).  The court may consider other materials in the record, even if not

15  cited by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F.*

16  *Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

17          When resolving cross-motions for summary judgment, the court has an "independent duty

18  to review each cross-motion and its supporting evidence . . . to determine whether that evidence

19  demonstrates a genuine issue of material fact."  *Fair Hous. Council of Riverside Cnty., Inc. v.*

20  *Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001).  Therefore, each motion is evaluated

21  separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences."

22  *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (citation omitted).  If the

23  moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively

24  demonstrate that no reasonable trier of fact could find other than for the moving party."

25  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  However, when the non-

26  moving party will bear the burden of proof on an issue, "the movant can prevail merely by

27  pointing out that there is an absence of evidence to support the nonmoving party's case."  *Id.*; *see*

28  *also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (stating that when the non-

moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); Fed. R. Civ. P. 56(c)(1)(B).  Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322–23.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr*, 285 F.3d at 773 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in

/////

1  order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations

2  omitted).

3      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

4  court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v.*

5  *Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing

6  party's obligation to produce a factual predicate from which the inference may be drawn.  *See*

7  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d

8  898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do

9  more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where

10  the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

11  there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87 (citations omitted).

12                                          **ANALYSIS**

13  **A.     Plaintiff's Motion for Summary Judgment**

14      "In circumstances where two or more liability insurance policies cover the same accident,

15  the California Legislature has adopted 'conclusive presumptions' to minimize insurance coverage

16  litigation and resolve the question of which policy is 'primary' (such that its policy limits must be

17  exhausted first), and which is 'excess.'" *Hallmark Specialty Ins. Co. v. Continental Ins. Co.*,

18  No. 20-cv-02046-HSG, 2020 WL 6342932, at *3 (N.D. Cal. Oct. 29, 2020) (citing Cal. Ins. Code

19  § 11580.9), *aff'd* No. 20-17314, 2022 WL 382037 (9th Cir. Feb. 8, 2022).  Under certain

20  circumstances such as those present here, "where two or more policies . . . apply to the same

21  motor vehicle . . . it shall be conclusively presumed that the insurance afforded by that policy in

22  which the motor vehicle is described or rated as an owned automobile shall be primary and the

23  insurance afforded by any other policy or policies shall be excess."[5]  Cal. Ins. Code § 11580.9(d).

24  "The California courts have interpreted § 11580.9(d) to require a 'particularization' of the vehicle

25  _____

26  [5]  The conclusive presumption imposed by § 11580.9(d) "may be modified or amended only by
written agreement signed by all insurers who have issued a policy or policies applicable to a loss
27  described in these subdivisions and all named insureds under these policies."  Cal. Ins. Code
§ 11580.9(f).  Here, the parties do not argue that any such written agreement was signed, nor does
28  any evidence before the court on summary judgment suggest that such an agreement exists.

in the policy, such that the statute does not reach a policy that does not describe or rate any particular vehicle, but simply insures all vehicles owned by a named corporation." *20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 755 n.7 (9th Cir. 1992) (citing *Hartford Accident & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal. App. 3d 1285, 1297 (1989)). If multiple policies particularize a vehicle, then both may be found to be primary. *See Wilshire Ins. Co. v. Sentry Select Ins. Co.*, 124 Cal. App. 4th 27, 35 (2004); *see also Scottsdale Indem. Co. v. Nat'l Continental Ins. Co.*, 229 Cal. App. 4th 116, 1173 (2014) ("We accept Scottsdale's premise that two insurance policies can be equally ranked or coprimary under section 11580.9.") (citing *Wilshire*, 124 Cal. App. 4th 27).[6]

Plaintiff moves for summary judgment in its favor, arguing that the Travelers policy does not describe or rate the Vehicle, that the Travelers policy is therefore excess under § 11580.9(d), and that the unambiguous language of the two alleged excess policies—i.e., the Travelers policy and the National policy—requires that defendant reimburse plaintiff for the defense costs incurred in the *McIntosh* and *Scott* actions. (Doc. No. 17.) In its combined opposition and cross-motion for summary judgment in its favor, defendant argues only that the Travelers policy does indeed describe the Vehicle, meaning that the Travelers policy is primary and the National policy is excess pursuant to § 11580.9(d). (Doc. No. 24.) Specifically, defendant argues that the Travelers policy is a "follow form" contract that incorporates by reference the description of the Vehicle in the Liberty policy. (Doc. No. 24 at 17–24.)

Plaintiff contends in response that the Travelers policy does not follow form to the Liberty policy's declarations page which contains the description of the Vehicle. (*See* Doc. Nos. 17 at 14–16; 25 at 6–8.) Plaintiff argues that the Travelers policy is only subject to the terms and conditions of the Liberty policy "except with respect to any provisions to the contrary contained in" the Travelers policy. (Doc. No. 17 at 14) (quoting Doc. No. 17-6 at 3). Moreover, plaintiff

---

[6] It is unclear whether plaintiff argues in its opposition to defendant's cross-motion for summary judgment that even if multiple policies describe a vehicle with particularization, § 11580.9(d) requires that only one of those policies is primary. (Doc. No. 25 at 8–9.) In any event, as noted above, the court rejects any such argument as contrary to California law. *See also Hartford*, 211 Cal. App. 3d at 1298 (concluding that one policy described the vehicle at issue but nevertheless considering whether another policy "also describe[d] or rate[d] the" vehicle).

1  asserts, the Travelers policy "clearly states that 'the Excess Follow-Form . . . Policy numbered

2  above includes *this* Declarations Page'" (Doc. No. 17 at 14) (quoting Doc. No. 17-6 at 2), and

3  that the declarations page of the Travelers policy does not specifically identify the Vehicle.  (Doc.

4  No. 17 at 14–15.)

5         In reply, defendant argues that the Travelers policy stating that it includes "this"

6  declarations page does not imply that the Travelers policy also excludes the declarations page

7  from the Liberty policy.  (Doc. No. 28 at 4.)  Defendant argues that "Travelers fails to explain

8  how the Liberty Policy's description of the [Vehicle] by make, model, year, and VIN is 'contrary'

9  to a single word in the Travelers Policy."  (*Id.*)

10        1.    Whether the Travelers Policy Incorporates by Reference the Description of the

11              Vehicle in the Liberty Policy

12        "When [a] district court's decision is based on an analysis of the contractual language and

13  an application of the principles of contract interpretation, that decision is a matter of law."  *Seoul*

14  *Semiconductor Co. v. Finelite, Inc.*, 694 F. Supp. 3d 1199, 1208 (N.D. Cal. 2023) (alterations in

15  original) (quoting *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1984)); *see also*

16  *Universal Cable Prods., LLC v. Atlantic Specialty Ins. Co.*, 929 F.3d 1143, 1151 (9th Cir. 2019)

17  ("[T]he interpretation of an insurance policy is a question of law . . . .").

18        Here, under the heading "Excess Follow-Form Liability," the Travelers policy states that

19  it "is subject to the same terms, conditions, agreements, exclusions, and definitions as the

20  'underlying insurance', except with respect to any provisions to the contrary contained in this

21  insurance."  (Doc. No. 17-6 at 3.)  Importantly, it has been recognized by California courts that

22  "[a] 'following form' excess policy . . . incorporates by reference the terms, conditions, and

23  exclusions of the underlying policy."  *Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.*, 14 Cal. App. 5th

24  281, 286 n.2 (2017); *see also Shy v. Ins. Co. of the State of Penn.*, 528 F. App'x 752, 754 (2013)

25  ("ISOP's insurance policy is a following-form policy, which means that it incorporates the terms

26  of the underlying policy.") (citing *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*,

27  161 Cal. App. 4th 184, 189 n.2 (2008)).  "A following form excess policy generally will contain

28  the same basic provisions as the underlying policy, with the exception of those provisions that are

1  inconsistent with the excess policy." *Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725, 734

2  (2016).

3      Contrary to plaintiff's assertion, nothing in the declarations page of the Liberty policy

4  ("the Liberty declarations") is inconsistent with the declarations page of the Travelers policy ("the

5  Travelers declarations"). In fact, while plaintiff emphasizes the final clause of the follow form

6  provision (*see* Doc. No. 25 at 8) ("*except with respect to any provisions to the contrary contained*

7  *in this insurance*"), plaintiff never explains how any specific provisions in the Liberty

8  declarations are contrary to any provisions in the Travelers declarations. Instead, plaintiff argues

9  that the language of the Travelers policy does not "purport to incorporate the" Liberty

10  declarations. (*Id.*) Plaintiff's argument is flatly contradicted by the provision in the Travelers

11  policy quoted above that expressly adopts all terms, conditions, agreements, exclusions, and

12  definitions of the Liberty policy.

13      Plaintiff suggests that by including the language "this Declarations Page"—i.e., the

14  declarations page of the Travelers policy—the Travelers policy meant to exclude the declarations

15  page of the Liberty policy. (Doc. No. 17 at 14–15.) Plaintiff offers sparse and unclear argument

16  on this point.[7] (*See id.*) Plaintiff does not highlight any evidence before the court on summary

17  judgment that supports this suggested interpretation, nor has the court identified any upon

18  independently reviewing the evidence before it. Moreover, "[p]olicy provisions must be

19  interpreted in context, giving effect to every part of the policy with each clause helping to

20  interpret the other." *Haering*, 244 Cal. App. 4th at 732 (internal quotation marks omitted). Here,

21  as defendant points out, it is undisputed that the Travelers policy incorporates by reference many

22  provisions of the Liberty policy that themselves refer to the Liberty declarations.[8] (*See* Doc.

23

24  [7] Indeed, while the court construes plaintiff to be implying this argument, the court notes that

25  plaintiff never advanced this argument directly or clearly in its briefing on the pending motions.

26  [8] To be precise, the court does not endorse or rely on defendant's argument that the Liberty

27  provisions referenced above would be illusory if the Liberty declarations are not incorporated by reference into the Travelers policy. (*See* Doc. No. 24 at 20–21.) Rather, the court is merely persuaded by defendant's more general point that the Travelers and Liberty policies must be

28  interpreted in light of all the relevant provisions appearing in each contract.

11

1    No. 24 at 20.)  Considering the plain language of the relevant Travelers and Liberty policy

2    provisions, which the court does not find to be ambiguous, the court is not persuaded by

3    plaintiff's proposed interpretation of the Travelers policy.  *See Haering*, 244 Cal. App. 4th at 732

4    ("Interpretation of an insurance policy . . . follows the general rules of contract interpretation.  . . .

5    The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular

6    sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by

7    usage' . . . controls judicial interpretation.").

8          The court also observes that the authority cited by plaintiff does not support its argument

9    in this regard.  Plaintiff cites multiple decisions that did not involve follow form contracts.  (*See*

10   Doc. No. 17 at 15) (citing *Hartford*, 211 Cal. App. 3d 1285; *Highlands Ins. Co. v. Continental*

11   *Cas. Co.*, 64 F.3d 514 (9th Cir. 1995)).  Of the decisions cited by plaintiff that did involve follow

12   form contracts, two are inapposite because the courts in those cases were confronting arbitration

13   provisions with entirely different language from that appearing in the Travelers and Liberty

14   policies now before this court.  *See Arch Specialty Ins. Co. v. Univ. of S. Cal.*, No. 19-cv-06964-

15   DDP-AS, 2020 WL 11272316, at *3–6 (C.D. Cal. July 20, 2020); *Lennar Corp. v. General Sec.*

16   *Indem. Co.*, No. G053418, 2017 WL 4294481, at *4 (Cal. Ct. App. Sept. 28, 2017) ("There is no

17   reason anyone would expect an insurance company based in Arizona that issued an insurance

18   policy from offices in New York to multiple corporations based in Delaware and California to

19   incorporate a provision from an Irish-based insurance company requiring arbitration in London,

20   England, pursuant to English arbitration rules.").

21         The only other decision cited by plaintiff also does not support its argument.  (*See* Doc.

22   No. 25 at 7–8) (citing *Starr Indem. & Liab. Co. v. Belger*, No. 15-cv-02566-SVW-DTB, 2016

23   WL 7646996, at *5 (C.D. Cal. Dec. 13, 2016)).  In its decision in *Starr*, the district court

24   concluded that the follow form clause at issue in that case did not incorporate a particular portion

25   of the underlying policy where the follow form clause did not specifically identify that portion.

26   2016 WL 7646996, at *5.  Crucially, however, the portion of the underlying policy at issue in

27   *Starr* was a limit of liability.  *See id.* ("[F]ollows form clauses are generally understood to apply

28   to the scope of coverage, which includes conditions and exclusions, not to the limits of liability.

12

1    . . .  There is no serious dispute that the [portion of the underlying policy] functions as a limit of

2    liability rather than a limit on the scope of coverage."); *id.* at \*6 ("[T]he follows form clause in

3    the Starr Policy explicitly incorporates the 'terms, definitions, conditions and exclusions' of the

4    [underlying policy], while limits of liability [are] conspicuously absent from the list.").  But

5    plaintiff does not contend that the description of the vehicle in the Liberty declarations is a limit

6    of liability rather than a limit on the scope of coverage.  Nor would any evidence before the court

7    on summary judgment support such a finding.  The district court's decision in *Starr* is therefore

8    inapposite.

9           The court therefore finds that, in light of the follow form clause and no provision to the

10   contrary, the Travelers policy incorporates by reference the description of the Vehicle contained

11   in the declarations page of the Liberty policy.  *See Shy*, 528 F. App'x at 754; *Haering*, 244 Cal.

12   App. 4th at 734.

13          2.    Whether the Travelers Policy Describes or Rates the Vehicle

14          The California Court of Appeal has implied that if an underlying policy describes a

15   vehicle with particularization, and an excess policy then incorporates by reference that underlying

16   policy, then the excess policy also describes that vehicle within the meaning of § 11580.9(d).  *See*

17   *Hartford*, 211 Cal. App. 3d at 1298–99; *see also id.* at 1298 ("The question, thus, is whether the

18   language of the Hartford Umbrella policy is reasonably susceptible to the interpretation that it

19   incorporated the Hartford Business Auto policy by reference."); *cf. id.* at 1299 ("There being no

20   incorporation by reference of the Hartford Business Auto policy into the Hartford Umbrella

21   policy, the 1976 Chevrolet Blazer is not 'described or rated as an owned automobile' in the

22   umbrella policy and the trial court did not err in holding that section 11580.9 did not apply to the

23   Hartford Umbrella policy.").  At least one federal district court has concluded that a vehicle may

24   be described for the purposes of § 11580.9(d) via incorporation by reference.  *See Zenith Ins. Co.*

25   *v. Old Republic Ins. Co.*, 392 F. Supp. 3d 1108, 1115–16 (N.D. Cal. 2019) ("The ORIC Policy

26   incorporated by reference the vehicle lists that were in ORIC's underwriting files.  . . .  [T]he lists

27   were incorporated by reference into the ORIC Policy and included a particularized description of

28   /////

1    the accident vehicle.  Therefore, the accident vehicle was described for purposes of section

2    11580.9(d).”).

3            Plaintiff suggests that an excess policy does not describe a vehicle where it merely lists

4    the underlying policy in its extension schedule.[9]  (Doc. No. 17 at 15) (citing *Hartford*, 211 Cal.

5    App. 3d 1285; *Highlands*, 64 F.3d 514).  However, as noted above, the California Court of

6    Appeal in *Hartford*—and the Ninth Circuit in *Highlands*, which followed the analysis in

7    *Hartford*, *see* 64 F.3d at 519—were confronting different circumstances than those presented

8    here.  In the decision in *Hartford*, “the court determined that an excess policy which merely

9    referenced an *underlying policy* describing the vehicle, but did not actually incorporate that

10   underlying policy by reference . . . did not describe the specific vehicle.”  *Mercury Ins. Co. v.*

11   *Chartis Prop. Cas. Co.*, No. G054369, 2018 WL 739755, at *11 (Cal. Ct. App. Feb. 7, 2018).[10]

12           The court agrees with the parties that the Liberty policy—which lists the year, make,

13   model, and VIN of the Vehicle—describes the Vehicle within the meaning of § 11580.9(d).  *See*

14   *Highlands*, 64 F.3d at 519 (“Both parties agree that Continental’s policy on the truck is primary

15   under the statute because it describes the truck as an owned automobile by reference to the

16   Vehicle Identification Number.”).  Because the court has concluded that the Travelers policy is a

17   follow form contract that incorporates by reference the Liberty policy, the court therefore finds

18   that the Travelers policy also describes the Vehicle.

19           The undisputed evidence before the court on summary judgment thus shows that by

20   operation of California Insurance Code § 11580.9(d) the Travelers policy is primary here.  And as

21   mentioned above, it is undisputed that the National policy is excess.  Therefore, plaintiff’s motion

22   for summary judgment in its favor, seeking declaratory judgment that plaintiff is entitled to

23   ─────────────────────

24   [9]  Again, it is not entirely clear from plaintiff’s briefing on the pending motions whether plaintiff
     is advancing such an argument.  The court nevertheless addresses the argument briefly out of an

25   abundance of caution.

26   [10]  Federal courts “may consider unpublished state decisions, even though such opinions have no
     precedential value.”  *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8

27   (9th Cir. 2003); *see also Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 681 n.12 (9th Cir.
     2021) (“Although these [California Court of Appeal] decisions are unpublished with no

28   precedential value, we may still consider them to interpret California law.”).

1    recover from defendant all sums paid by plaintiff to defend and indemnify WEC with respect to

2    the *McIntosh* and *Scott* actions, will be denied.  *See Zenith*, 392 F. Supp. 3d at 1110, 1113–17

3    (denying the defendant's motion for summary judgment where "the parties' cross-motions ask the

4    court to decide whether the accident vehicle is 'described or rated' as an owned car in the ORIC

5    Policy" and the court found that the defendant's policy described the accident vehicle).

6    **B.       Defendant's Cross-Motion for Summary Judgment**

7            Defendant moves for summary judgment in its favor as to all of plaintiff's claims on the

8    grounds that, because the Travelers policy is primary and the National policy is excess, plaintiff is

9    not entitled to any declaration to the contrary, nor is plaintiff entitled to any equitable indemnity,

10   subrogation, contribution, or reimbursement from defendant.  (Doc. No. 24 at 2.)  As discussed

11   above, the court has concluded that the undisputed contract language demonstrates that the

12   Travelers policy is primary and the National policy is excess pursuant to § 11580.9(d).

13   Accordingly, defendant's cross-motion for summary judgment in its favor as to plaintiff's claims

14   will be granted.  *Cf. Zenith*, 392 F. Supp. 3d at 1110, 1113–17 (granting the plaintiff's motion for

15   summary judgment "to the extent Zenith seeks a determination that ORIC Policy is conclusively

16   presumed to be primary" where the ORIC Policy incorporated by reference documents that

17   described the relevant vehicle).

18           /////

19           /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

15

1

**CONCLUSION**

2          For the reasons explained above,

3          1.      Plaintiff's motion for summary judgment in its favor (Doc. No. 17) is DENIED;

4          2.      Defendant's motion for summary judgment in its favor (Doc. No. 24) is

5                  GRANTED; and

6          3.      The Clerk of the Court is directed to enter judgment in favor of defendant and

7                  close this case.

8          IT IS SO ORDERED.

9   Dated:   **March 20, 2025**                    _____
                                                    DALE A. DROZD
10                                                  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28